Kay **BISHOP, et al., Plaintiffs,**

v.

**REAGAN–BUSH '84 COMMITTEE, et al., Defendants.**

**Civ. No. C–1–84–1296.**

United States District Court, S.D. Ohio.

March 7, 1986.

---

Robert B. Newman, Michael O'Hara, Stanley Hirtle, Marc Mezibov, Cincinnati, Ohio, for plaintiffs.

Robert A. Behlen, Asst. U.S. Atty., W. Stuart Dornette, Cincinnati, Ohio, Ronald Robertson, Washington, D.C., Jerry Luttenegger, Cincinnati, Ohio, for defendants.

## ORDER .

CARL B. RUBIN, Chief Judge.

This matter is before the Court on motions of the Defendants for summary judgment, upon extensive memoranda in favor of and in opposition to such motions and upon a hearing held April 10, 1985. Plaintiffs seek monetary damages against Defendants for an asserted violation of constitutional rights. Pursuant to Rule 52 of the Federal Rules of Civil Procedure, the Court does submit herewith its Findings of Fact, Opinion and Conclusions of Law. Although there is no dispute as to the operative facts, the Court will indicate those Findings of Fact which are a basis for its opinion.

### I.

### FINDINGS OF FACT

1. On August 20, 1984 a political rally sponsored by "Reagan-Bush '84 Committee" was held on Fountain Square in the City of Cincinnati. Ronald Reagan, President of the United States, was the featured speaker. He was in the last year of his first term as President and had not yet been nominated by the Republican Party for a second term. While it was a foregone conclusion that Mr. Reagan would be nominated at the Republican convention, it was a future event at the time.

2. Since the location and terrain of the Fountain Square Plaza are critical to an understanding of this case, the Court has attached Exhibit A which is a schematic drawing of Fountain Square.

The area known as "Fountain Square Plaza" is bounded on the south by Fifth Street, on the west by Vine Street and on the east by Walnut Street. It occupies something less than one-half of the block contained within those streets and Sixth Street on the north.

Entrance is limited. On the north side a building known as the "Fifth Third Center" extends from Vine Street on the west to Walnut Street on the east. The building fronts on Sixth Street and extends southward for almost one-half of the block. Approximately midway between those streets is a covered entry way leading from Sixth Street. On the east is a building attached to the Fifth Third Center and extending southward known as the "DuBois Tower". It fronts on Walnut Street and extends southward for over one-half of the remaining frontage on Walnut Street. There is a covered entrance with steps from Walnut Street between the Fifth Third Center and the DuBois Tower and there is a second sloping entrance south of the DuBois Tower extending to Fifth Street.

On the south there is an entrance with steps from Fifth Street and an overhead walkway with a stairway leading from buildings on the south side of Fifth Street.[1] On the west there is a sloping entrance from the northeast corner of Fifth and Vine Streets, an entrance with steps approximately midway from Fifth Street and the Fifth Third Center and a third entrance with steps opposite a street known as "Opera Place" and immediately south of the Fifth Third Center. Only the entrance from Sixth Street is at ground level, two

---

1. This walkway does not appear on Exhibit A but is located where the stairs from the plaza to Fifth Street are drawn in the map.

others contain an inclined ramp and the remaining four have steps.

Even though the Fountain Square Plaza is open, the terrain is such that any other entrance or exit is blocked by trees, walls and the slope of the ground. For the entire length on Fifth Street, the level of the Plaza is three to four feet above the street level itself and is blocked by bushes and by a low wall. Most of the Vine Street frontage is likewise blocked by bushes, trees and wall. In addition, there are numerous plantings of trees, gardens and other impediments to a free flow of traffic. The open area of Fountain Square Plaza is dominated by a fountain near the southern border known as the "Tyler Davidson Fountain". It also has an effect of limiting the free movement of persons on the square. Including the area devoted to the fountain the level portion of Fountain Square Plaza is approximately 140 feet by 180 feet.[2] For purposes of crowd control, the limited access to and exit from the plaza area of Fountain Square Plaza would more resemble a hall for performers than it would an open field or area.

3. A permit to hold a political rally on Fountain Square Plaza was obtained from the City of Cincinnati by the Reagan-Bush '84 Committee. A copy of that permit is attached as Exhibit B. Those persons who wished to attend the rally were required to present themselves at entrances to Fountian Square Plaza and to be subjected to a security check. All persons carrying signs whether in favor of President Reagan or not were required to abandon their signs before entering the Fountain Square Plaza. Those who wished to accept them were issued new signs by the Reagan-Bush '84 Committee all of which were complimentary to the President. Plaintiffs assert that the confiscation of signs violated their First Amendment rights. There is no allegation that any person was denied entrance to Fountian Square Plaza, was forced to accept a sign or was subjected to any excessive force in the removal of his or her sign.

The defendants made it a condition of entrance onto the plaza was that such signs be relinquished. The rally proceeded without incident. President Reagan spoke from a temporary platform erected on Fountian Square Plaza. At the conclusion of his speech the rally terminated and the listeners left the Fountain Square area.

## II.

### OPINION

There is a simple question presented in this case, involving First Amendment rights. That question, however, has two aspects. First, do the Plaintiffs have an unlimited right to participate in any political rally as an exercise of their First Amendment rights; or, does a speaker as an exercise of his First Amendment rights have a right to speak without interruption, heckling or interference, either orally or visually, at a political rally organized by his supporters. While both are rights protected by the First Amendment, they are mutually inconsistent and only one may prevail. There is no doubt that "the exercise of First Amendment rights may be regulated where such exercise will unduly interfere with the normal use of the public property by other members of the public with an equal right of access to it." *Amalgamated Food Employees Union v. Logan Valley Plaza, Inc.*, 391 U.S. 308, 320–21, 88 S.Ct. 1601, 1609–10, 20 L.Ed.2d 603 (1968).

Plaintiffs' counsel concedes that a speaker has a First Amendment right not to be heckled, not to be interfered with and not to be disrupted (T. at 27—April 10, 1985). His precise words were as follows:

Mr. Newman [counsel for Plaintiffs]: "Your Honor asked previously if there is a First Amendment right or just a right not to be heckled, not to be interfered with while you are making a speech, not to be disrupted. *There certainly is such a right at least under state law and there is a state statute that prohibits*

**2.** The above dimensions were obtained by using the scale on Exhibit A and are not cited as

precise, nor as having a bearing upon the legal issues involved herein.

*interference with a lawful meeting ....*" (emphasis added)[3]

It must be understood that this was a political rally for the supporters of the President. A permit had been obtained from the City of Cincinnati to conduct a rally on Fountain Square Plaza. By the nature of the gathering it was an exclusive use of the area. If the supporters of Mr. Mondale and Ms. Ferraro had wished to conduct a similar rally before or after or both they were free to do so. The one thing they could not do is hold a second rally simultaneously. The Supreme Court of the United States dealt with this problem in the case of *Grayned v. City of Rockford*, 408 U.S. 104, 115, 92 S.Ct. 2294, 2302–03, 33 L.Ed.2d 222 (1972). The descriptive sentence used by the Supreme Court which expresses the issue accurately and recurs frequently in cases dealing with this subject is as follows:

> [T]wo parades cannot march on the same street simultaneously, and government may allow only one.

*Id.*, at 115, 92 S.Ct. at 2303.

It is eloquently asserted by Plaintiffs' counsel that all Plaintiffs sought to do was to express their views by raising signs. Neither the Court nor anyone else can determine at this point whether or not that is the fact. What might have happened had Plaintiffs retained their signs on the Square and sought either silently or orally to interfere with or disrupt the speech of the President remains a mystery. Such actions in the past have been the focus of confrontations ranging from arguments to minor riots. Had such an adversary confrontation occurred, the crowd on Fountain Square Plaza could not have been readily dispersed because of the limited number of exits available for them.

The First Amendment rights of a speaker to deliver his address without interruption and without heckling, either oral or visual are sufficiently clear that such a finding should be dispositive. The rights of the intruders, however, should be examined. There is impressive authority that they are not unlimited. The Supreme Court of the United States speaking through Justice Stewart in the case of *Democratic Party of the United States v. State of Wisconsin*, 450 U.S. 107, 122, 101 S.Ct. 1010, 1019, 67 L.Ed.2d 82 (1981) stated:

> On several occasions this court has recognized that the inclusion of persons unaffiliated with a political party may seriously distort its collective decisions—thus impairing the party's essential functions—and that political parties may accordingly protect themselves 'from intrusion by those with adverse political principles.' *Ray v. Blair*, 343 U.S. 214, 221–222, 72 S.Ct. 654, 657–58, 96 L.Ed. 894 (1952).

*See also Rosario v. Rockefeller*, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973).

The Supreme Court of the United States speaking through Justice White in *Heffron v. International Society for Krishna Consciousness*, 452 U.S. 640, 647, 101 S.Ct. 2559, 2564, 69 L.Ed.2d 298 (1981), observed:

> It is also common ground, however, that the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired. *Adderley v. Florida*, 385 U.S. 39, 47–48 [87 S.Ct. 242, 247–48, 17 L.Ed.2d 149] (1966); *Poulos v. New Hampshire*, 345 U.S. 395, 405 [73 S.Ct. 760, 766, 97 L.Ed. 1105] (1953) ...
>
> As the Minnesota Supreme Court recognized, the activities of ISKCON [Interna-

---

**3.** Ohio Revised Code § 2917.12 provides:

(A) No person, with purpose to prevent or disrupt a lawful meeting, procession, or gathering shall do either of the following:

(1) Do any act which obstructs or interferes with the due conduct of such meeting, procession, or gathering;

(2) Make any utterance, gesture, or display which outrages the sensibilities of the group.

(B) Whoever violates this section is guilty of disturbing a lawful meeting, a misdemeanor of the fourth degree.

The Committee comment to H. 511 notes that "a person who asserts his rights to free speech, expression, or assembly in such a way as to intentionally interfere with the exercise of the same rights by others is guilty of an abuse of the right."

tional Society for Krishna Consciousness] like those of others protected by the First Amendment, are subject to reasonable time, place and manner restrictions. *Grayned v. City of Rockford,* 408 U.S. 104 [92 S.Ct. 2294, 33 L.Ed.2d 222] (1972); *Adderley v. Florida, supra; Kovacs v. Cooper,* 336 U.S. 77 [69 S.Ct. 448, 93 L.Ed. 513] (1949); *Cox v. New Hampshire,* 312 U.S. 569 [61 S.Ct. 762, 85 L.Ed. 1049] (1941).

Other district courts have considered the limitations on First Amendment rights. One court upheld the arrest of a demonstrator on public property who sought to intrude upon an event for which a permit had been obtained, even though the intrusion was peaceful. *Sanders v. United States,* 518 F.Supp. 728 (D.C.D.C.1981) *aff'd without opinion* 679 F.2d 262 (D.C. Cir.1982). Another court upheld the ejection of a citizen from a gathering at which all members of a school board were in attendance and issues of public policy were discussed. *Nabhani v. Coglianese,* 552 F.Supp. 657 (N.D.Ill.1982)

The *Sanders* case is sufficiently close to the matter at hand that it warrants additional review. A group under the name of Pageant of Peace received a permit for use of the Ellipse in Washington, D.C. The plaintiff sought to express his views on another subject by placing three small signs beneath a Christmas tree and standing beside the tree while holding a larger sign. Mr. Sanders was arrested and asserted that he had a First Amendment right to call public attention to a matter he deemed important. The reasoning of the Honorable John Lewis Smith, Jr., District Judge of the District of Columbia, is worth repeating. Judge Smith stated:

> Secondly, and more fundamentally, is the interest in guaranteeing citizens the right to participate in events or demonstrations of their own choosing *without being subjected to interference by other citizens.* A physical intrusion into another event for the purpose of interjecting one's own convictions or beliefs is by definition *an interference regardless of how insubstantial or insignificant it might appear.* As such it is an interference with the rights of other citizens to enjoy the event or demonstration in which they have chosen to participate, and in an area reserved for them.... *Plaintiff had an undeniable right to express his views, whatever they were, but not in an area set aside for another event where his intrusion would be an interference.* (Emphasis added)

518 F.Supp. at 730.

It should be noted that contrary to the *Sanders* case Plaintiffs herein were not arrested, were not prevented from attending the event and were not forced to accept any signs in order to attend. They were simply prevented from conducting a demonstration of their own at a specific time and place. No such counter-demonstration is within First Amendment rights "regardless of how insubstantial or insignificant it may appear." *Id.*

The Court notes in passing that the decision of Judge Smith was affirmed without opinion by the United States Court of Appeals for the District of Columbia in 679 F.2d 262 (D.C.Cir.1982).

The matter then becomes one of degree. Plaintiffs assert that the interference by Defendants even if warranted was "excessive". Discretionary decisions such as this are always subject to scrutiny. Frequently they are scrutinized by attorneys who had no responsibility for safety, who were not confronted by large crowds of people, and were not involved in the confusion that always attends such a gathering. After the fact and in the quiet and solitude of their law offices and after careful deliberate and extended thinking, counsel can always point to a better method of doing something. This is known in popular parlance as "20–20 hindsight".

The Defendants not so endowed made their decisions on the basis of conditions then and there prevailing. The Court will take judicial notice that in the past twenty years our society has seen one President assassinated, one presidential candidate killed, one presidential candidate paralyzed

for life, one President of the United States shot at twice, one President of the United States shot and wounded—all at or near public political gatherings. We are a peaceful society with elements of violence that lurk frighteningly near the surface. If in the judgment of those concerned with the security of the President of the United States under the circumstances involved decided that they would not permit disruption, either oral or physical, that decision should not be viewed in a vacuum, but considered in terms of what has happened at political gatherings in the past.

Plaintiffs were not barred from holding a political demonstration of their own at a different time or place. Plaintiffs were not arrested, nor were they barred from attending the rally. All Plaintiffs were barred from doing was interfering with a political rally.

## III.

### CONCLUSIONS OF LAW

A. The exercise of First Amendment rights is subject to reasonable time, place and manner restrictions. *Heffron v. International Society for Krishna Consciousness,* 452 U.S. 640, 647, 101 S.Ct. 2559, 2563–64, 69 L.Ed.2d 298 (1981); *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

B. Mr. Reagan had a First Amendment right to speak without interference at a rally for which the Reagan-Bush '84 Committee had obtained a permit.

C. Demonstrations which intrude on an event held on public property for which a permit had been obtained, may be regulated. *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Sanders v. United States,* 518 F.Supp. 728 (D.C.D.C.1981) *aff'd without opinion* 679 F.2d 262 (D.C.Cir.1982)

D. It was not an excessive regulation of Plaintiff's First Amendment rights to require them to relinquish signs not supportive of Mr. Reagan before attending the rally on Fountain Square.

IT IS SO ORDERED.

BENCH MARKS

LOW RISE BUILDING (NIC)

COVERED WALKWAY (NIC)

INTAKE

PAVEMENT

NOT IN THIS CONTRACT

EAST GROVE

CLAY PAVING

HIGH RISE TOWER STRUCTURE

FACE OF HIGH RISE BUILDING ABOVE

EASEMENT

PROPERTY LINE

HIGH RISE PROPERTY LINE

FACE OF CURB

WALNUT STREET

Rebuild around Tree Well

Rebuild around Tree Well

ONLY THESE LINES PARALLEL TO FIFTH ST. - SEE DIMENSION NOTE 8, THIS SHEET

PROPERTY LINE

GARAGE BELOW

FACE OF CURB

IN THIS CONTRACT

FIFTH STREET

CITY OF CINCINNATI
DEPARTMENT OF PUBLIC WORKS
APPLICATION FOR PERMIT TO USE FOUNTAIN SQUARE PLAZA/SKYWALK

NAME OF ORGANIZATION _Reagan - Bush '84 Committee_

Address: _440 First St. N.W._  _Wash. D.C._ _20001_  Telephone _202-383-1984_
(Zip Code)

AUTHORIZED AGENT _Robert A. Taft II,  Ohio  Co-Chairman_

Address _1900 5th 3rd. Center_  _45202_  Telephone _621-6464_
(Zip Code)

Proposed Use of Square BE VERY SPECIFIC _Presidential Rally_

_____

_____

Starting Date _August 19, 1984_  Ending Date _August 20, 1984_  TIME: START: _____
FINISH: _____

Nature of Display or Structure (if any) (describe Square location) _____

_____

_____

Amplification/Electric Usage (explain) _____

Other important facts _____

_____

Assembly or rally – attendance (approximate number) _____

Applicant hereby states that the proposed use of the Square/skywalk will be in conformance with Chapter 713 of the Cincinnati Municipal Code and with the City Manager's rules and regulations governing the use of the Square/Skywalk (attached).

DATE _Aug. 15, 1984_  SIGNATURE _Robert Taft II_
(authorized agent for organization)

_For specific questions, contact Jim Kuhn, Advance, 621-4111_

The above permit is GRANTED subject to the Following Requirements:_____

_____

_____

Submit COMPLETED (in full) application to:  Mr. George Rowe
Director of Public Works
Room 450, City Hall
801 Plum Street
Phone:  352-3218  Cincinnati, Ohio  45202

ABSOLUTELY NO VEHICLES PERMITTED; NO SALES; NO DISTRIBUTION OF FOOD

APPROVED:

_GEORGE ROWE_  August 16, 1984
GEORGE ROWE
DIRECTOR OF PUBLIC WORKS  Date Approved

(When approved and signed, this application becomes a valid permit for use of Fountain Square as described.)

THIS PERMIT MUST BE KEPT ON PERSON DURING EVENT AT FOUNTAIN SQUARE  AND SHOWN UPON REQUEST