**Frederick Gerome OLIVER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–86–00966–CR.**

Court of Appeals of Texas, Dallas.

Oct. 26, 1987.

Stewart E. Parker, Lawrence B. Mitchell, Dallas, for appellant.

Teresa Tolle, Dallas, for appellee.

Before WHITHAM, ROWE and HECHT, JJ.

HECHT, Justice.

A jury convicted Frederick Gerome Oliver of kidnapping and assessed punishment at 99 years' imprisonment and a $4,000 fine. The trial court permitted defense counsel to inquire of prospective jurors with prior jury service in criminal cases whether they were selected to assess punishment, but refused to allow the further inquiry of whether they actually did assess punishment. The sole issue on appeal is whether the trial court's ruling was an abuse of discretion. We answer no and affirm the judgment of the trial court.

The State argues that there is no significant difference between the allowed question—whether the jury on which the prospective juror previously served was selected to assess punishment—and the disallowed question—whether that jury actually did assess punishment. Strictly speaking, however, the two questions are quite different. The allowed question merely inquires whether the accused in the former case chose prior to trial to have his punishment assessed by the jury rather than the court. A correct answer to the question would reveal nothing about whether the accused was found guilty. The disallowed question, on the other hand, yields additional information; for if a jury actually assesses punishment in a case, the accused has either pled guilty or been found guilty. Someone who would know how infrequently defendants plead guilty before juries would know the likelihood that a prospective juror who actually assessed punishment in a case also found the defendant guilty.

Whether the prospective jurors perceived the difference between the two questions here without any explanation being given to them is another matter altogether and one as to which there may be considerable doubt. One can only wonder what exactly the prospective jurors in this case intended by their answers to the question whether they had ever served on a jury selected to assess punishment. Nevertheless, we must assume that they understood the question put to them and answered it correctly. We cannot assume that the prospective jurors misunderstood the allowed question and really answered the disallowed question.

The conduct of voir dire examination rests within the sound discretion of the trial court. *Bridge v. State,* 726 S.W.2d 558, 564 (Tex.Crim.App.1986); *Moore v. State,* 542 S.W.2d 664 (Tex.Crim.App.1976). Restrictions upon voir dire may be reversed only for an abuse of discretion. *Smith v. State,* 703 S.W.2d 641, 643 (Tex.Crim.App. 1985); *Smith v. State,* 513 S.W.2d 823, 826–827 (Tex.Crim.App.1974).

■ It is not an abuse of discretion for a trial court to refuse to allow defense counsel to inquire of prospective jurors with prior jury service in criminal cases what verdict they reached in those cases. *Bolden v. State,* 634 S.W.2d 710, 712 (Tex. Crim.App.1982); *Redd v. State,* 578 S.W.2d 129, 130–131 (Tex.Crim.App.1979); *Wragg v. State,* 65 Tex.Cr.R. 131, 145 S.W. 342, 343 (1912); *Espinosa v. State,* 653 S.W.2d 446, 450 (Tex.App.—San Antonio 1982), *aff'd,* 669 S.W.2d 736 (Tex.Crim.App.1984). The State argues that the disallowed question is nothing more than a poorly disguised attempt by defense counsel to find out indirectly what the trial court could properly preclude counsel from inquiring about directly, viz, whether a prospective juror has voted to convict as a juror in some prior case. Oliver argues that he was entitled to ask the disallowed question for five reasons, which we shall address individually.

First, Oliver argues that whether a prospective juror has previously served on a jury that actually assessed punishment is an important factor in assessing his experience and qualifications. Whatever relevance such information might have in a particular case, it is far from essential. Here, juror information cards available to Oliver and the entire voir dire examination by both sides provided much information regarding the experiences and qualifications of the venire. At some point voir dire must end and the trial must begin. Where that point is to be set is the decision of the trial court to be made in the sound exercise of its discretion. *Redd,* 578 S.W.2d at 130–

131. The trial court has the right to confine examination of the venire within reasonable limits. *Hughes v. State,* 562 S.W. 2d 857, 862 (Tex.Crim.App.), *cert. denied,* 439 U.S. 903, 99 S.Ct. 268, 58 L.Ed.2d 250 (1978). In this case the trial court's exercise of its discretion was reasonable and proper.

Second, Oliver argues that what a prospective juror remembers about his prior jury service, including any assessment of punishment, indicates the importance of the experience to him and his strength of recall. There are, however, many other ways of testing a venireman's memory and the importance to him of prior criminal jury experience without inquiring whether he previously assessed punishment. This reason is not so compelling as to show an abuse of discretion.

Third, Oliver argues that jurors' failure to reach a decision on punishment, like their failure to reach a decision on guilt, shows their unwillingness to yield to the views of one another to reach agreement. Assuming this information is relevant, the most direct way to obtain it would simply be to ask whether any prospective juror had served on a jury in a criminal case that failed to reach a decision on punishment. Counsel chose to ask a much broader question. Without deciding whether counsel should ever be allowed to ask the narrower question, we hold simply that it was not an abuse of discretion in this case for the trial court to prohibit counsel from asking the broader question.

1. The only reference in our record to what information was available to the State is the following colloquy between Oliver's attorney and the trial court during the voir dire examination:

[Defense Counsel:] [The prosecutor] has access to the information as to what the juror's verdicts were and I do not and so in effect, the Court is ruling to preclude me going into something that [the prosecutor] through his own DA sources can get and he knows the verdict and knows the punishment—

THE COURT: First of all, I think you're going into things that are not necessarily the case because I think that the records are so old up there that they're useless. . . .

2. The unofficial tape recordings of oral argument reflect the following colloquy:

Fourth, Oliver argues that the disallowed question is an important part of the colloquy used by counsel to build rapport with prospective jurors. Rapport with jurors may be a by-product of voir dire, but it is no basis for the right to make reasonable inquiry, and certainly no basis for alleging that limitation of inquiry was an abuse of discretion. The purpose of the voir dire examination of the venire is to elicit information to lay a predicate for challenging prospective jurors for cause or exercising preemptory challenges. *See Smith,* 513 S.W.2d at 826–827. The purpose of voir dire is not to "rap" with jurors.

Fifth, Oliver argues that, even if the disallowed question would reveal whether prospective jurors had previously voted for conviction, he is entitled to the information because the district attorney's office maintains records on how individual jurors vote in each case and thus has the same information available. In the first place, there is no evidence that the district attorney's office has the same information available.[1] Although the State's attorney conceded at oral argument that the district attorney's office keeps some information about how individual jurors vote in cases, there is no evidence that the district attorney's office had any information pertaining to the veniremen in this case.[2] In the second place, even if the district attorney's office had such information, there is no evidence that the information was made available to the prosecutor conducting the voir dire examination of the venire.[3] Finally, even if the

JUSTICE WHITHAM: Does the State have this information in its computers or elsewhere, that defense counsel sought to obtain.

STATE'S ATTORNEY: It may have, Your Honor. In this particular case, I don't know if the prosecutor actually had this information at hand.

JUSTICE WHITHAM: Does the district attorney's office keep these records on each juror who sits in a criminal case in Dallas County? You ought to be able to tell me whether they do or do not.

STATE'S ATTORNEY: Yes, they are supposed to keep this record.

3. The following additional colloquy occurred at oral argument:

JUSTICE WHITHAM: And is this sort of information routinely assembled and given to

prosecutor did have information as to how the veniremen with prior jury service in criminal cases had voted, the trial court did not abuse its discretion in refusing to allow defense counsel to obtain the same information during voir dire. *See Bolden,* 634 S.W.2d at 712; *Redd,* 578 S.W.2d at 130. This is especially true when defense counsel might have been able to obtain the same information from the district clerk or district attorney prior to trial without extending the time for voir dire. *Cf. Espinosa,* 653 S.W.2d at 450 (mandamus will not issue to compel discovery of prosecution's records regarding prospective jurorsunless party has right to see records and it is shown no other way exists to compel their discovery).

Oliver has not shown an abuse of discretion by the trial court in this case. On the contrary, we conclude that the trial court sensitively weighed defense counsel's request and ruled well within his discretion. We therefore overrule Oliver's point of error and affirm the judgment of the trial court.

WHITHAM, J., files concurring opinion.

WHITHAM, Justice, concurring.

I concur in the result. In his sole point of error, appellant contends that the trial court erred in denying his timely request to voir dire prospective jurors on issues relating to punishment and thereby deprived him of the effective use of his peremptory challenges. In this connection, appellant insists that the trial court should have allowed him to ask prospective jurors with prior jury service in criminal cases whether they actually assessed punishment in the prior case. I concur with the majority's disposition of the five arguments advanced under appellant's sole point of error. As to appellant's fifth argument, I write to express the different reason I reject appellant's fifth argument. For the reasons

that follow, I find no merit in appellant's fifth argument. Consequently, I would overrule appellant's sole point of error and affirm.

I begin by noting that the present case involves a disallowed question to prospective jurors and not an accused's motion to discover information possessed by the State. Therefore, in my view, the case relied upon by the majority is inapplicable. *See Bolden v. State,* 634 S.W.2d 710, 712 (Tex.Crim.App.1982). Although *Bolden* states that "[a]ppellant was not allowed to ask members of the panel what their verdicts had been in previous trials," the issue actually was whether the trial court erred in denying discovery. *Bolden,* 634 S.W.2d at 712. Hence, I do not read *Bolden* as authority supporting the majority's reasoning. This disagreement expressed, I turn to the reason I concur in the majority's disposition of appellant's fifth argument.

At oral argument, the State conceded that the information sought by appellant through the disallowed question was, as a matter of practice by the Dallas County District Attorney's office: (a) kept by that office, and (b) furnished to each prosecutor conducting the voir dire examination of the venire for the prosecutor's use. Thus, the State admits that the information sought by appellant is important enough to the State to be compiled and used in jury selection. To my mind, if the information sought by appellant bears that degree of relevancy to the State in exercising its peremptory challenges, then the information bears the same degree of relevancy to the appellant.

I recognize, however, that it is not only the right but the duty of the trial court to confine the examination of prospective jurors within reasonable limits. Otherwise, some trials would never terminate. *La Rosa v. State,* 414 S.W.2d 668, 672 (Tex. Crim.App.1967). This duty does not carry with it, however, the authority to refuse appellant's counsel the privilege of exam-

the prosecutors in your criminal district courts in Dallas County?
STATE'S ATTORNEY: It should be, yes.
JUSTICE WHITHAM: If things are working properly it would be given the prosecutor?

STATE'S ATTORNEY: Yes.
The State never indicated at oral argument, nor does the record reveal, that things were working properly at the trial of this case.

ining each juror individually within reasonable limits. *La Rosa*, 414 S.W.2d at 672. The voir dire process is designed to insure—to the fullest extent possible—that an intelligent, alert and impartial jury will perform the duty assigned to it by our judicial system. *La Rosa*, 414 S.W.2d at 671. Trial by impartial jury has been considered a bulwark of Anglo–American liberties particularly in criminal cases where it operates as a protection of civil liberties. An impartial jury has been said to be one which favors neither party, which is unprejudiced, disinterested, equitable, and just, and which is composed of jurors who have not pre-judged the merits of the case. *La Rosa*, 414 S.W.2d at 671.

If we are to have *La Rosa*'s impartial jury, then in my view an accused must be allowed voir dire on relevant matters. As noted, the information sought had relevancy; otherwise, the State would not go to such lengths to make it available to its prosecutors. Nevertheless, the inquiry does not end at this point. We must look to the relevancy appellant sees in the information sought. In his brief, appellant tells us that "[i]n the pending cause appellant elected to have punishment determined by the jury. It, therefore, was relevant during voir dire to determine whether or not the prospective jurors had any experiences in this regard." Thus, appellant wished to learn if prospective jurors had previous experience in determining punishment. But as the majority points out, appellant was allowed to ask whether the jury on which the prospective juror previously served was selected to assess punishment. Therefore, the first and allowed question afforded appellant the opportunity to discover the information claimed to be relevant; to wit: if the prospective jurors had previous experience in determining punishment. Hence, I conclude that the disallowed question was unnecessary in the present case. Consequently, the trial court properly confined the examination of prospective jurors within reasonable limits. *La Rosa*, 414 S.W.2d at 672. Therefore, the trial court did not abuse its discretion in preventing appellant from asking a proper question. Hence, I

would overrule appellant's sole point of error and affirm.