**Gardell Anthony MOREHEAD, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 05–87–00038–CR.

Court of Appeals of Texas,
Dallas.

Feb. 2, 1988.

Rehearing Denied April 1, 1988.

Howard C. Rubin, Dallas, for appellant.

Pamela Sullivan Berdanier, Dallas, for appellee.

Before STEPHENS, STEWART and BAKER, JJ.

STEWART, Justice.

Gardell Anthony Morehead was convicted of disrupting a lawful meeting, a violation of TEX.PENAL CODE ANN. § 42.05 (Vernon 1974). The jury assessed punishment at thirty days' confinement, probated, and a fine of $250. Appellant raises sixteen points of error, contending that: 1) the statute is unconstitutionally overbroad and vague; 2) the trial court erred in refusing to submit requested jury instructions; 3) the court committed error when it refused him an evidentiary hearing on his motion to quash; 4) it was improper to prevent testimony and comments from defense counsel concerning first amendment rights; and 5) the evidence is insufficient to support the conviction. For the reasons below, we affirm appellant's conviction.

## I. THE FACTS

The record indicates that appellant attended a session of the national convention

of a sorority, at which Jesse Jackson, a sometime presidential candidate, was the speaker. Jackson showed a film and then began a speech. There was no question and answer session, and the audience was not intended to participate except by listening. About three-fourths of the way through Jackson's speech, appellant arose from his seat and began walking down the center aisle of the auditorium toward the podium. As he reached the front row of seats, he began yelling, apparently at Jackson. A lady from the audience grabbed appellant's arm and said, "we didn't come to hear you speak, please sit down." Appellant pulled away from the woman and continued down the aisle toward Jackson.

There are conflicting versions of what appellant was saying. Some witnesses testified that he was just screaming, with no discernable words. Several witnesses agreed that he called Jackson a liar. One witness testified that he was questioning Jackson about South African affairs, Nicaragua, and the International Monetary Fund. The stories of the audience's reaction also varied. Some testified that the crowd got loud, with women standing and screaming, approaching hysteria, very hostile. Others stated that there was little reaction other than amusement. There was also disagreement among witnesses as to whether appellant was addressing Jackson, the audience, or both.

When appellant first began yelling, Jackson continued his speech. He eventually stepped away from the podium, interrupting his speech. The police then approached appellant and told him he would have to leave. Appellant continued his yelling, and the police, after a brief struggle, escorted him out of the convention center. He continued yelling as he was escorted up the aisle. After he left, the audience applauded, and Jackson resumed his speech. The witnesses testified that the entire disturbance lasted from thirty seconds to two minutes.

## II. CONSTITUTIONALITY OF STATUTE

Section 42.05 of the Texas Penal Code provides:

A person commits an offense if, with intent to prevent or disrupt a lawful meeting, procession, or gathering, he obstructs or interferes with the meeting, procession, or gathering by physical action or verbal utterance.

In his first three points of error, appellant contends that the statute is facially overbroad, overbroad as applied to him, and vague. For these reasons, he contends, the statute violates the first and fourteenth amendments of the United States Constitution and article 1, section 8 of the Texas Constitution.[1]

The first amendment provides: "Congress shall make no law ... abridging the freedom of speech, or of the press...." U.S. CONST. Amend. I. This limitation on federal governmental authority also applies to state governments via the fourteenth amendment. *Lovell v. Griffin*, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938). This prohibition against enacting legislation abridging speech has not been read literally by the United States Supreme Court. Thus, the Court has stated, "[T]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. International Society For Krishna Consciousness*, 452 U.S. 640, 101 S.Ct. 2559, 2564, 69 L.Ed.2d 298 (1981). This Court must, however, scrutinize closely a statute that on its face punishes spoken words. *See Gooding v. Wilson*, 405 U.S. 518, 520–21, 92 S.Ct. 1103, 1105, 31 L.Ed.2d 408 (1972). Such a restriction may be unconstitutionally broad or vague.

### A. *Overbreadth*

■ A statute is considered impermissibly overbroad if, in addition to proscribing

---

1. Appellant does not suggest, and we find no authority suggesting, that the Texas constitutional prohibition against restrictions on speech affords greater protection than the Federal Constitution. Therefore, we will assume that the analysis of section 42.05 under both constitutions is similar.

activities which may constitutionally be forbidden, it sweeps within its coverage speech or conduct which is protected by the first amendment. *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed. 2d 830 (1973); *Clark v. State,* 665 S.W.2d 476, 482 (Tex.Crim.App.1984). We must determine whether section 42.05 prohibits protected speech. We are not restricted to the consideration of whether appellant's speech was protected. Rather, we must consider whether the application of section 42.05 in other situations would also restrict protected speech:

> [W]e have consistently allowed attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity. [citations]. We have fashioned this exception to the usual rules governing standing, ... because of the '... danger of tolerating in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application.

*Dombrowski v. Pfister,* 380 U.S. 479, 486–87, 85 S.Ct. 1116, 1120–21, 14 L.Ed.2d 22 (1965).

### 1. Competing First Amendment Rights

In this case, appellant's right to speak comes into conflict with the first amendment rights of the scheduled speaker and the rights of the audience members to assemble peaceably and to listen to the scheduled speaker. We must examine these competing interests.

■ The Supreme Court has recognized that much of the speech and conduct that disturbs, disrupts or annoys others is constitutionally protected. *See Coates v. City of Cincinnati,* 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971); *Cox v. Louisiana,* 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); *Edwards v. South Carolina,* 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963). Although audience activities such as heck-

ling, interrupting, and harsh questioning may be contrary to ordinary good taste and decorum, they can, nevertheless, advance the goals of the first amendment. The first amendment contemplates a debate of public issues, a free interchange of ideas resulting in the ascertainment of truth. *See Garrison v. Louisiana,* 379 U.S. 64, 73, 85 S.Ct. 209, 215, 13 L.Ed.2d 125 (1964). "The First Amendment presupposes that the freedom to speak one's mind is not only an aspect of individual liberty—and thus a good unto itself—but also is essential to the common quest for truth and the vitality of society as a whole." *Bose Corp. v. Consumers Union,* 466 U.S. 485, 104 S.Ct. 1949, 1961, 80 L.Ed.2d 502 (1984).

The heckling and harassment of public officials and other speakers while making public speeches is not new to American politics. *See In re Kay,* 1 Cal.3d 930, 83 Cal.Rptr. 686, 464 P.2d 142 (1970) (Congressman Tunney); *University Committee to End War in Vietnam v. Gunn,* 289 F.Supp. 469 (W.D.Tex.1968) (President Johnson); *Pope v. State,* 192 Misc. 587, 79 N.Y.S.2d 466 (1948) (Governor Dewey); *People v. Malone,* 156 App.Div. 10, 141 N.Y.S. 149 (1913) (Governor Wilson). In *Landry v. Daley,* 280 F.Supp. 968 (N.Ill. 1968), the court commented:

> Political campaigns, athletic events, public meetings and a host of other activities produce loud, confused or senseless shouting not in accord with fact, truth or right procedure to say nothing of not in accord with propriety, modesty, good taste or good manners. The happy cacophony of democracy would be stilled if all 'improper noises' in the normal meaning of the term was suppressed.

*Id.* at 970. For many citizens, such participation in public meetings, whether supportive or critical of the speaker, may constitute the only manner in which they can express their views to a large number of people.

■ It seems, then, that an astute and disputatious audience serves an important function and is entitled to some degree of

first amendment protection. However, it is equally clear that the scheduled speaker has a right to express his views. *See Bishop v. Reagan–Bush '84 Committee*, 635 F.Supp. 1020 (S.D.Ohio 1986). The first amendment also protects the associational rights of those who attend the meeting to hear the scheduled speaker. "The constitutional guarantees of the free exercise of religious opinion, and of the rights of the people peaceably to assemble and petition for a redress of grievances, would be worth little if outsiders could disrupt and prevent such a meeting in disregard of the customs and rules applicable to it." *Kay*, 83 Cal. Rptr. at 691, 464 P.2d at 147.

■■■ Since the Constitution indubitably affords some measure of protection to the speech and associational rights of all those present at a meeting, section 42.05's prohibition of disruption potentially may collide with safeguarded first amendment interests. Nonetheless, the State retains a legitimate concern in ensuring that some individuals' unruly assertion of their rights of free expression does not imperil other citizens' rights of free association and discussion. Freedom of everyone to talk at once can destroy the right of anyone to talk effectively. Free expression can expire as tragically in the tumult of license as in the silence of censorship. *See Red Lion Broadcasting Co. v. Federal Communications Committee*, 395 U.S. 367, 89 S.Ct. 1794, 1810 n. 23, 23 L.Ed.2d 371 (1969) (regulation of radio waves survives first amendment attack because "[h]ere is truly a situation where if everybody could say anything, many could say nothing."); *cf. Kovacs v. Cooper*, 336 U.S. 77, 81, 69 S.Ct. 448, 451, 93 L.Ed. 513 (1949) (ordinance may restrict sound trucks' emissions because "[u]nrestrained use throughout a municipality of all sound amplifying devices would be intolerable.").

■■■ Nevertheless, the State cannot protect others from hecklers except through a restriction drawn with a narrow

specificity calculated to prevent repression of constitutionally protected conduct. *Gooding*, 92 S.Ct. at 1106. On its face, section 42.05 applies to every person who intentionally disrupts any meeting through physical actions or verbal utterances. If read literally, the statute prohibits some constitutionally protected activity. *See Gooding*, 92 S.Ct. at 1105. Thus, the statute is unconstitutionally broad. Invalidating a statute on overbreadth grounds is, however, "strong medicine." *Broadrick*, 93 S.Ct. at 2916. As such, it is employed sparingly and only as a last resort. Facial overbreadth will not be invoked when a limiting construction can be placed on the challenged statute. *Young v. American Mini Theatres*, 427 U.S. 50, 60, 96 S.Ct. 2440, 2447, 49 L.Ed.2d 310 (1976); *Broadrick*, 93 S.Ct. at 2916.

### 2. Narrowing Construction

■■■ The United States Supreme Court, in deciding whether picketing was constitutional, stated, "[t]he crucial question is whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time." *Grayned v. City of Rockford*, 408 U.S. 104, 116, 92 S.Ct. 2294, 2303, 33 L.Ed.2d 222 (1972). If the manner of expression is compatible with the normal activity, the State may not constitutionally prohibit it. If the manner of expression is inconsistent, however, the State can constitutionally restrict it. Thus, section 42.05 can be narrowed to reach only unprotected expression if it is construed to prohibit only speech and physical action incompatible with the normal activity of a particular place at a particular time.

In *Kay*, 83 Cal.Rptr. 686, 464 P.2d 142, the California court reached a similar conclusion: "[W]e now explicitly recognize that, in light of the purposes of the provision and the competing First Amendment interests at stake, section 403 [2] authorizes the imposition of criminal sanctions only

---

**2.** "Every person who, without authority of law, willfully disturbs or breaks up any assembly or

when the defendant's activity itself—and *not* the content of the activity's expression—substantially impairs the effective conduct of a meeting." *Kay,* 83 Cal.Rptr. at 694, 464 P.2d at 150 (emphasis original). To effectuate this narrowing construction, the court required a showing that the defendant had substantially impaired the conduct of the meeting by intentionally committing acts in violation of implicit customs or usages or of explicit rules for governance of the meeting, of which he knew, or as a reasonable man should have known. *Id.* The court recognized that in applying the standard, the nature of the meeting would necessarily play a major role:

> The customs and usages at political conventions may countenance prolonged, raucous, boisterous demonstrations as an accepted element of the meeting process; similar behavior would violate the customs and usages of a church service. Audience participation may be enthusiastically welcomed at a bonfire football rally or an athletic contest, but considered taboo at a solemn ceremony of a fraternal order.

*Kay,* 83 Cal.Rptr. at 694, 464 P.2d at 150. In *Kay,* farm workers' protest, involving clapping, shouting slogans and waving banners during a Fourth of July rally in a public park was held not to violate the norms of behavior at such a meeting.

We hold that section 42.05 prohibits only those disruptive physical actions and verbal utterances that are in violation of the normal customs and rules of governance, implicit or explicit, of the meeting, of which the accused knew, or as a reasonable person should have known. In applying this standard, the nature of the meeting shall play a crucial role. With this narrowing construction, the statute prohibits only speech that is not protected by the first amendment. *See Grayned,* 92 S.Ct. at 2303. Consequently, we hold that section 42.05, as limited by this opinion, is not unconstitutionally overbroad.

meeting not unlawful in is character, ... is guilty of a misdemeanor." CAL.PENAL CODE

### 3. Overbroad As Applied

■ Appellant contends that the statute is overbroad as applied to him because his expressive conduct was constitutionally protected. We must examine his conduct and the nature of the meeting to determine whether his speech and conduct were incompatible with the nature of the meeting such that he violated implicit or explicit rules of governance or normal customs.

The Delta Sigma Theta sorority held its 1985 National Convention in Dallas, Texas. The local steering committee obtained the appropriate permits to hold the meeting at the Dallas Convention Center. Jesse Jackson was one of the keynote speakers at the convention. The meeting at which Jackson spoke was not open to the general public; only sorority members, their guests, and the press were invited. The indoor meeting was considered formal. The audience was not intended to participate, and there was no question and answer session. Prior to appellant's outburst, there were no vocalizations or audience participation, other than applause when Jackson was introduced. Appellant arose from his seat, walked down the center aisle, and had a brief physical altercation with an audience member. He approached Jackson, standing approximately six feet from him, and yelled loudly enough to drown out Jackson's amplified voice. Given the nature of the meeting, appellant's conduct was incompatible with the meeting. Appellant clearly violated the implicit rules of conduct for a formal meeting for members of the sorority, their invited guests and the press. Thus, we hold that the statute is not overbroad as applied to appellant's unprotected speech.

### B. *Vagueness*

Appellant contends that section 42.05 is unconstitutionally void for vagueness. For a penal statute to be deemed unconstitutionally vague, it must either forbid or re-

§ 403 (West 1985).

quire the doing of an act in terms so vague that people of common intelligence must necessarily guess at its meaning and differ as to its application, thereby violating the fair notice requirement of due process of law. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); *Cotton v. State*, 686 S.W.2d 140, 141 (Tex.Crim.App.1985). A statute is void for vagueness if it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute, or if it encourages arbitrary and erratic arrests and convictions. *Papachristou*, 405 U.S. at 162, 92 S.Ct. at 843; *Huett v. State*, 672 S.W.2d 533, 537 (Tex. App.—Dallas 1984, pet. ref'd).

▇▇▇ Appellant contends that the statute is vague because it gives no standards for applying the words "prevent," "disrupt," "obstruct," or "interfere." He concedes, however, that these terms have common meanings. Words defined in dictionaries and with meanings so well known as to be understood by a person of ordinary intelligence are not to be considered vague and indefinite. *Floyd v. State*, 575 S.W.2d 21, 23 (Tex.Crim.App.1978). *See also Campos v. State*, 623 S.W.2d 657, 658 (Tex. Crim.App.1981).

▇▇▇ Appellant argues further that the statute is vague because it leaves to the discretion of police the extent of disruption which must exist for a violation to occur. The statute is clear, however, in requiring conduct which does in fact obstruct or interfere with the meeting. To obstruct, the verbal utterances or physical conduct must hinder or impede the operation of the meeting. *See* WEBSTER'S NEW INTERNATIONAL DICTIONARY 1559 (3d ed. 1981). In order to interfere, the conduct must also hinder or prevent the meeting. *Id.* at 1178. By its very terms, then, the statute provides objective standards with which to judge a person's conduct. The police officers' discretion is not unlimited.

▇▇▇ Appellant also contends that section 42.05 is vague because the enforcement of the statute depends upon the arousal level of the audience. In *Coates,* the Supreme Court invalidated an ordinance which prevented two or more persons from conducting themselves in such a manner as to annoy others. The Court held that the statute was vague because it was geared to the annoyance of others rather than to the conduct of the accused. *Coates*, 91 S.Ct. at 1688. Section 42.05 prohibits expressive conduct without regard to the reaction of the audience. Thus, we cannot agree with appellant's contention that the statute is void under the *Coates* rationale. Appellant's conduct in yelling loudly enough to drown out the scheduled speaker interfered with the meeting, exclusive of any reaction by the audience.

We hold that section 42.05 provides a person of ordinary intelligence fair notice of what conduct is prohibited by the law and provides direction sufficient to prevent arbitrary and erratic arrests and convictions. Because the statute is not void for vagueness, nor, with its limiting construction, is it overbroad, we overrule appellant's first three points of error.

### III. JURY INSTRUCTIONS

In points of error four through twelve, appellant contends that the trial court erred in refusing to submit to the jury certain requested instructions. Appellant sought to instruct the jury on the first amendment, to define "interfere," "obstruct," "prevent," and "disrupt," and to restrict the jury's consideration of evidence "obtained in violation of" the first amendment.

### A. *First Amendment Instructions*

Appellant requested four instructions purporting to inform the jury of what speech and activity is constitutionally protected. All four requested instructions were variations of the following instruction:

REQUESTED JURY CHARGE 1:

You are instructed that freedom of speech granted to us by the United States and Texas constitutions means that a person has the right in our society to express thoughts or disseminate information or ideas in public as long as this speech does not incite imminent lawless action, thus posing a clear and present danger to society. At the core of freedom of speech is the right to espouse political views and associate for political purposes.

Audience activities such as heckling, interrupting, and harsh questioning or even making a statement using profanity or obscenities, even though they may be impolite and discourteous are protected by the constitutions of this State and nation.

Our constitution does not require that the effective expression of ideas be restricted to rigid and predetermined patterns such as speaking from a podium or dias. Our laws contemplate debate on public issues and their protections are not narrowed to a meeting at which the audience must passively listen to a single point of view.

Consequently, you are instructed that the offense in question is not intended to reach the aforementioned types or modes of speech, but is intended to reach those situations where a person causes a significant obstruction or interference with a lawful meeting by actions or words that can have no other purpose than to prevent or disrupt the meeting. Thus, the aforementioned "intent," if any, to prevent or disrupt a lawful meeting must be the predominant intent of the person. In order to prove this intent, the State must prove beyond a reasonable doubt that (1) no bona fide intent to exercise a constitutional right appears from the evidence to have existed; and (2) that, if the intent to exercise such a right existed, the interest to be advanced by the particular exercise of a constitutional right was insignificant or minuscule in comparison to the interference, disruption, obstruction, and prevention of the meeting, if any.

Requested Jury Charge Two paraphrased the intent instruction in the fourth paragraph of instruction one. The third requested charge posited exercise of first amendment rights as a defensive issue. Requested Jury Charge Four repeated the first three paragraphs of Charge One.

The jury is the exclusive judge of the facts, and is bound to receive the law from the court. TEX.CODE CRIM.PROC. ANN. art. 36.13 (Vernon 1981). However, there are numerous legal matters that must be resolved by the court and not by the jury. *See White v. State*, 119 Tex. Crim. 338, 45 S.W.2d 225 (1932) (validity of search warrant question for the court); *Stearnes v. State*, 21 Tex. 692 (1858) (province of court to determine what games are within the inhibition of gambling statute); *Loftin v. State*, 624 S.W.2d 351 (Tex.App. —Dallas 1981, pet. ref'd) (validity of prior conviction question for court, not jury). The jury is never the judge of the law in a criminal proceeding. *Myles v. State*, 170 Tex.Crim. 479, 341 S.W.2d 913, 915 (1960). In fact, it is error to allow the jury to resolve a legal question. *Id.* Appellant's requested charges ask the jury whether his activity was protected under the first amendment. The United States Supreme Court has held that the court has the ultimate responsibility for determining whether speech is protected by the first amendment because that is a question of law. *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 1692 n. 10, 75 L.Ed.2d 708 (1983).

Further, it is proper to refuse to give special requested charges which are vague and misleading and do not correctly state the law. *Wickware v. State*, 488 S.W.2d 127, 129 (Tex.Crim.App.1972); *Stewart v. State*, 438 S.W.2d 560, 561 (Tex. Cr.App.1969); *Gill v. State*, 670 S.W.2d 758, 761 (Tex.App.—Corpus Christi 1984, pet. ref'd). The requested instructions in this case state that all heckling—except that advocating imminent lawlessness—is protected by the first amendment. We have not held that the first amendment reaches so far. Thus, the requested

charges incorrectly state the law. The charges also track language in *Al–Omari v. State,* 673 S.W.2d 892, 897 (Tex.App.—Beaumont 1983, pet. ref'd), regarding the statute's intent requirement. We decline to follow *Al–Omari;* thus, the requested charge, which required the State to prove more than section 42.05 requires, is not a correct statement of the law. Consequently, we hold that the court properly refused appellant's requested jury charges concerning the first amendment.

## B. *Definitional Instructions*

 Appellant requested that the court define for the jury the words interfere, obstruct, prevent and disrupt. The charge given did not include definitions of these words. Section 42.05 does not include definitions for these terms, nor are they defined elsewhere in the penal code. Where there is no statutory definition of a term, the question of the trial court's obligation to define the term depends on whether the term has such a common and ordinary meaning that jurors can be fairly presumed to know and apply such meaning. *Russell v. State,* 665 S.W.2d 771, 780 (Tex.Crim. App.1983), *cert. denied,* 465 U.S. 1073, 104 S.Ct. 1428, 79 L.Ed.2d 752 (1984). Where the terms used are words simple in themselves and are used in their ordinary meaning, jurors are supposed to know such common meaning and terms, and under such circumstances such common words are not necessarily to be defined in the charge to the jury. *Russell,* 665 S.W.2d at 780.

In ruling that section 42.05 is not unconstitutionally vague, we have held that the words prevent, disrupt, obstruct and interfere have meanings so well known as to be understood by a person of ordinary intelligence. The trial court was, therefore, correct in refusing to define these words in the charge to the jury.

## C. *Exclusionary Instruction*

 Appellant requested the submission of the following charge:

You are instructed that the constitutions of the State of Texas and the United States grant to persons the right of freedom of speech. If you believe, or have a reasonable doubt, that the arrest of Gardell Anthony Morehead, and evidence presented before you in this case was obtained in violation of these provisions, you will not consider any evidence adduced herein regarding the activities of Gardell Anthony Morehead at the National Convention of the Delta Sigma Theta Sorority, Inc. on August 6, 1985, nor the evidence of any witnesses who testified about such activities.

As authority for the submission of this charge, appellant relies upon article 38.23 of the Code of Criminal Procedure. Article 38.23 provides that evidence obtained in violation of Texas or federal laws or constitutions is inadmissible in a criminal prosecution. If there is a fact issue regarding whether the police acquired the evidence in violation of the laws or constitutions, the jury must be instructed to resolve the factual dispute and then disregard any evidence it decides was improperly obtained. TEX.CODE CRIM.PROC.ANN. art. 38.23 (Vernon 1979); *Murphy v. State,* 640 S.W. 2d 297, 299 (Tex.Crim.App.1982).

Article 38.23 requires a jury instruction only if there is a dispute as to *how* evidence was obtained. *Thomas v. State,* 723 S.W. 2d 696, 707 (Tex.Crim.App.1986). Here, appellant does not question how evidence was obtained; rather, he questions the nature of his activity vis a vis first amendment protection. Further, it is not the jury's function to determine whether appellant's speech was constitutionally protected. *Connick,* 103 S.Ct. at 1692 n. 10. We have held as a matter of law that appellant's conduct was not constitutionally protected.

For these reasons, we hold that the trial court properly refused to submit appellant's requested jury charges and overrule points of error four through twelve.

## IV. EVIDENTIARY HEARING

 In his thirteenth point of error, appellant contends that the trial court

erred in refusing to grant a pre-trial evidentiary hearing on his motion to quash the information. The record reflects that appellant filed a written motion to quash, alleging defects in the information and challenging the constitutionality of the statute. The trial court held a pre-trial hearing and overruled appellant's motion to quash after hearing argument on the motion from counsel. Appellant claims that the trial court erred in refusing to permit defense counsel to put the two police officers who apprehended appellant on the stand and question them as to their standards for enforcing section 42.05 in order to establish that the statute was unconstitutionally applied to appellant.

The function of a motion to quash an indictment or information is to call the trial court's attention to defects in that charging instrument that are not obvious on its face. *Green v. State*, 533 S.W.2d 769, 770 (Tex. Crim.App.1976). Thus, a defendant may allege that an indictment is void because the statute authorizing the offense is unconstitutional on its face. Appellant contends, however, that he can complain of an unconstitutional application of a statute via a motion to quash, thus entitling him to evidentiary review of the information's allegations. The Court of Criminal Appeals has stated:

> An indictment must stand or fall upon the averment found in that document itself. The evidence may not be looked to in aid thereof. If so, many indictments good on their faces would be bad in the light of the evidence, and vice versa; many bad on their faces would be good where the evidence makes out a case if it had been properly pleaded.

*Bourland v. State*, 133 Tex.Crim. 544, 112 S.W.2d 720, 720 (1937).

Thus, it appears that appellant was not entitled to a hearing to review the evidence which he contends would have shown that the statute was unconstitutionally applied. Cases authorizing an evidentiary hearing on a motion to quash involve some defect in the pre-indictment process which the de-

fendant has the burden to prove. *See Wheat v. State*, 537 S.W.2d 20, 21 (Tex. Crim.App.1976) (defendant had burden to show complaint serving as basis of information was defective); *Worton v. State*, 492 S.W.2d 519, 520 (Tex.Crim.App.1973) (accused must prove defect in prior conviction alleged for enhancement purposes); *Ray v. State*, 561 S.W.2d 480, 481 (Tex. Crim.App.1977) (defendant must prove existence of unauthorized persons in grand jury proceedings before indictment may be quashed); *Guerra v. State*, 478 S.W.2d 483, 484 (Tex.Crim.App.1972) (proof showing systematic exclusion of minorities from grand jury service required to invalidate indictment). Appellant, in this case, sought to prove some insufficiency in the evidence. Therefore, we hold that the trial court did not err in refusing to hold an evidentiary hearing.

## V. REFERENCES TO FIRST AMENDMENT

In point of error fourteen, appellant contends that the trial court erred in refusing to allow appellant's counsel to allude to first amendment rights during voir dire and during jury argument.

### A. *Voir Dire*

During voir dire, defense counsel attempted to instruct the jury on first amendment rights. He also sought to question prospective jurors on whether they agreed with the law under which appellant was prosecuted and whether they believed they had a right to challenge a speaker with whom they did not agree. The court sustained the State's objections to the attorney's statement and questions. Appellant argues that the trial court's action denied him his right to effective assistance of counsel.

The constitutional right to effective assistance of counsel carries with it the right to interrogate members of the jury in order to intelligently exercise both peremptory challenges and challenges for cause. *East-*

*erling v. State,* 710 S.W.2d 569, 575 (Tex. Crim.App.), *cert. denied,* —— U.S. ——, 107 S.Ct. 170, 93 L.Ed.2d 108 (1986). A trial court may, however, impose reasonable restrictions on the exercise of voir dire examination. *Smith v. State,* 676 S.W.2d 379, 384 (Tex.Crim.App.1984), *cert. denied,* 471 U.S. 1061, 105 S.Ct. 2173, 85 L.Ed.2d 490 (1985). The conduct of voir dire examination rests within the sound discretion of the trial court. *Bridge v. State,* 726 S.W.2d 558, 564 (Tex.Crim.App.1986). Restrictions upon voir dire may cause reversal only if the trial court abused its discretion. *Smith v. State,* 703 S.W.2d 641, 643 (Tex.Crim. App.1985); *Oliver v. State,* 739 S.W.2d 656, 657 (Tex.App.—Dallas, 1987, no pet.).

Discretion in regulating voir dire examination is abused when the trial court prohibits a proper question about a proper area of inquiry. *Patterson v. State,* 654 S.W.2d 825, (Tex.App.—Dallas 1983, pet. ref'd). However, when a matter is not an issue in the case, the trial court does not abuse its discretion in restricting voir dire on the subject. *Greene v. State,* 651 S.W. 2d 948, 952 (Tex.App.—Dallas 1983), *aff'd,* 676 S.W.2d 359 (Tex.Crim.App.1984). We have held that the first amendment was not an issue of concern to the jury; therefore, the trial court did not abuse its discretion in restricting voir dire questions concerning the first amendment.

### B. *Jury Argument*

■ Appellant contends that the trial court erred in refusing to allow him to argue to the jury the effects of the first amendment. Again, we note that the effect of the first amendment is a matter for the court, not the jury. Appellant sought to argue that the Constitution allowed him to take the action that section 42.05 prohibited. Thus, he argued, in effect, that the jury should ignore the law given in the charge, and instead, follow the attorney's version of the Constitution.

It is well settled that both the State and the defense are entitled to discuss facts admitted into evidence and to explain legal concepts as long as the examples given by counsel do not constitute a statement of the law contrary to that in the charge. *Wilder v. State,* 583 S.W.2d 349, 362 (Tex. Crim.App.1979). But no party has a right to bring before the jury a matter of either law or fact for the purpose of causing them to rebel against the law and refuse to follow it. *Toone v. State,* 144 Tex.Crim. 98, 161 S.W.2d 90, 92 (1942); *Eckert v. State,* 672 S.W.2d 600, 603 (Tex.App.—Austin 1984, pet. ref'd). Nor can the State or defendant make a statement of what purports to be the law when same is not contained in the court's charge. *Cook v. State,* 540 S.W.2d 708, 710 (Tex.Crim.App. 1976). Thus, we hold that the trial court properly prevented this line of argument. We overrule appellant's fourteenth point of error.

### VI. SUFFICIENCY OF EVIDENCE

In his final points of error, appellant contends that the evidence is insufficient to support his conviction. Specifically, he argues that evidence of intent and of interference with the meeting is lacking. The standard for appellate review of the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Garrett v. State,* 682 S.W.2d 301, 304 (Tex. Crim.App.1984), *cert. denied,* 471 U.S. 1009, 105 S.Ct. 1876, 85 L.Ed.2d 168 (1985).

### A. *Intent to Disrupt*

■ Section 42.05 requires the accused to act with intent to prevent or disrupt a lawful meeting. It is well settled that the jury may infer intent from the acts, words and conduct of the accused. *Dues v. State,* 634 S.W.2d 304, 306 (Tex.Crim.App.1982). Numerous witnesses testified that appellant approached Jackson and yelled loudly enough to drown out his voice. He continued to yell and struggle as police escorted him from the auditorium. Jackson had to interrupt his speech because of appellant's

actions. Appellant's intent to disrupt the meeting could be inferred from the evidence. Thus, the evidence was sufficient to support this element of the offense.

### B. Obstruction or Interference

Appellant contends that the evidence fails to show interference or obstruction of the meeting as contemplated by section 42.05. The record negates his contention. Several witnesses testified that appellant's yelling caused Jackson to stop his speech. The meeting's activities could not be continued until appellant, still yelling, was removed from the room. Appellant argues that the meeting was not interrupted because the disturbance lasted only a short time. The statute does not require that the disruption continue for any length of time. Section 42.05 requires only that the meeting in fact be interfered with or obstructed. The evidence amply showed such interference and obstruction. Thus, we overrule points of error fifteen and sixteen.

Having overruled appellant's sixteen points of error we affirm the judgment of the trial court.