**AFFIRMED; Opinion Filed April 28, 2017.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-16-00201-CR**

**No. 05-16-00202-CR**

**No. 05-16-00203-CR**

**No. 05-16-00204-CR**

**ROBERT TYRONE JONES, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 196th Judicial District Court**
**Hunt County, Texas**
**Trial Court Cause Nos. 30314, 30315, 30316 & 30897**

## MEMORANDUM OPINION

Before Justices Bridges, Evans, and Schenck
Opinion by Justice Evans

Robert Tyrone Jones appeals his convictions for manufacturing or delivery of a controlled substance and unlawful possession of a firearm by a felon. The jury sentenced appellant to forty years' imprisonment in the drug case, and ten years' imprisonment in each of the three firearm cases. In three issues, appellant claims that the trial court erred in denying his motion to suppress evidence, by failing to submit a jury instruction under article 38.23 of the Code of Criminal Procedure, and by granting the State's motion in limine limiting defense counsel's closing argument. We affirm.

## BACKGROUND

On January 13, 2015, Officer Hamilton of the Greenville Police Department was on routine patrol and noticed a vehicle stopped at the end of the entrance driveway leading to the parking lot of an apartment complex with its reverse and brake lights on. Due to the hour of the morning, Officer Hamilton did not stop because he thought that the occupant of the vehicle might be picking someone up or getting ready to head off for work. Thirty minutes later, Officer Hamilton came back through the area and saw that the vehicle was sitting in the same exact spot with the reverse and brake lights still on. He decided to make contact with the vehicle to do a welfare check. The video of Officer Hamilton's contact with appellant's vehicle was admitted into evidence and shows that when the officer pulled his police car behind the vehicle, there was nothing blocking appellant's vehicle which would have prevented him from pulling forward or turning left or right into the parking area. Before approaching the vehicle, Officer Hamilton called in the license plate number to dispatch to check for anything outstanding on the vehicle; nothing came back. When he walked up to the vehicle and looked in the window, he saw appellant asleep in the driver's seat. Officer Hamilton knocked on the window numerous times before appellant woke up. Once he began talking to appellant, he suspected that appellant might be intoxicated due to his slurred speech and red and glassy eyes. The officer did not smell any alcohol but did smell marijuana and asked appellant to exit the vehicle. After appellant refused to exit the vehicle, Officer Hamilton called other officers to assist him. One of the officers saw a loaded gun underneath appellant's leg while they were removing appellant from the vehicle. Two guns and several knives were found on appellant's person, along with a black case containing methamphetamine, marijuana, and two Xanax pills. A chrome weight, digital scales, unused Ziploc baggies, and a case with several rounds of ammunition and a gun magazine were found in appellant's vehicle.

# ANALYSIS

## I.  Motion to Suppress

In appellant's first issue, he contends that the trial court erred in denying his motion to suppress.  Appellant argues that the detention was not justified under the community caretaking doctrine.  The State first argues that appellant has waived error because his claim on appeal does not comport with the arguments he raised at trial.  We disagree.

The pretrial motion to suppress filed by appellant was carried along with trial and was heard midway after the officers involved in the detention and arrest testified and the State sought to admit into evidence a handgun and two magazines which were retrieved from the seat of the vehicle.  During the hearing, defense counsel made several arguments, including the argument that the illegal detention began when the officer approached the vehicle and knocked on the window since the officer had not observed any criminal offense. In the alternative, he argued that the investigative detention began when the officer began his inquiry as to why appellant was there, stating, "He didn't walk up and say, hey, buddy, are you okay?  It was, what are you doing; why are you there?"  The State argued that the officer had the right to approach the standing vehicle; that after he saw somebody asleep with the reverse and brake lights on, he had a reason to make a community welfare stop; and that once the officer spoke with appellant and smelled marijuana in the vehicle, reasonable suspicion was established to detain him for intoxication.  After hearing argument, the trial court denied the motion, and made the following findings:

> All right. Based on – based on the evidence that I've heard so far and particularly focusing -- I want to be clear -- only on the testimony of Officer Hamilton -- I think everybody else's came after the point where we all agree that an investigative detention had begun, regardless of where we think that particular line falls. So focusing only on Officer Hamilton's, the Court is going to deny the Motion to Suppress.

And I want to state my reasons for the record. I believe Officer Hamilton had reason to approach the vehicle and to determine the condition of the person inside, determining whether they needed assistance, based on his testimony that he observed the vehicle on two separate occasions approximately 30 minutes apart in the same state. The Court particularly notes that he testified that on both occasions he observed the car with its backup lights or reverse lights on, which was an unusual circumstance that drew his attention to the vehicle and caused him to approach it in the first place.

Once he began to talk to the defendant, Mr. Hamilton testified that he found the defendant's speech to be slurred, his eyes to be red, his eyes to be glassy, and that he believed he smelled the odor of marijuana. And on that basis I believe that he had sufficient probable cause or reasonable suspicion to believe that that particular defendant had been or soon would be engaged in criminal activity or was then engaged in criminal activity. I believe that was sufficient.

So on that basis, and considering the standard that's required of an officer that a reasonable -- reasonably-cautious person would have believed that the action they took was appropriate under the circumstances, the Court is going to deny the Motion to Suppress. I find that there's more than a mere hunch or suspicion by the time the investigative detention began. Again, on that basis the Court is going to deny the Motion to Suppress.

Error preservation is not an inflexible concept. *Thomas v. State*, 408 S.W.3d 877, 884 (Tex. Crim. App. 2013). "[T]here are no technical considerations or form of words to be used. Straightforward communication in plain English will always suffice." *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992). A party need not state his objection with specificity in order to preserve error so long as the record otherwise makes it clear that both the trial court and the opposing party understood the legal basis. *Thomas*, 408 S.W.3d at 884–885. Based on the arguments made by the State, and the findings made by the trial court, the record is clear that both the trial court and the State understood that appellant's objection included an argument against the applicability of the community caretaking doctrine.

We now turn to appellant's claim that the detention was not justified under the community caretaking doctrine. A trial court's ruling on a motion to suppress is reviewed for an abuse of discretion. *Lujan v. State*, 331 S.W.3d 768, 771 (Tex. Crim. App. 2011) (per curiam). In conducting this review, appellate courts employ a bifurcated standard. *Amador v. State*, 221

S.W.3d 666, 673 (Tex. Crim. App. 2007). We give almost total deference to a trial court's rulings on questions of historical fact and mixed questions of law and fact that turn on an evaluation of credibility and demeanor, but we review de novo mixed questions of law and fact that do not turn on credibility and demeanor. *Id.*

We view the evidence in the light most favorable to the trial court's ruling, regardless of whether the trial court granted or denied the motion to suppress. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011). Therefore, we afford the prevailing party the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from the evidence. *Id*. When, as in this case, the trial court makes findings of fact, we determine whether the evidence, when viewed in the light most favorable to the court's ruling, supports those findings. *Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013).

Local police officers frequently engage in "community caretaking functions," totally divorced from the detection, investigation, and acquisition of evidence relating to the violation of a criminal statute. *Byram v. State*, No. PD-1480-15, 2017 WL 359791, at *3 (Tex. Crim. App. Jan. 25, 2017) (citing *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973)). "As part of his duty to 'serve and protect,' a police officer may stop and assist an individual whom a reasonable person—given the totality of the circumstances—would believe is in need of help." *Id.* (quoting *Wright v. State*, 7 S.W.3d 148, 151 (Tex. Crim. App. 1999)). A police officer may not properly invoke his community caretaking function if he is primarily motivated by a non–community caretaking purpose." *Corbin v. State,* 85 S.W.3d 272, 276–277 (Tex. Crim. App. 2002). Determining whether an officer may properly invoke his community-caretaking function is "a two-step inquiry: (1) whether the officer was primarily motivated by a community-caretaking purpose; and (2) whether the officer's belief that the individual needed help was reasonable." *Gonzales v. State*, 369 S.W.3d 851, 854–55 (Tex. Crim. App. 2012).

Assuming without deciding, that appellant was seized under the Fourth Amendment when Officer Hamilton required appellant to roll down his window and started questioning him, the inquiry as to Officer Hamilton's motivation for the contact is a factual question that turns on the credibility and demeanor of the officer when he testified at trial. Officer Hamilton testified that he decided to make contact with the vehicle to do a welfare check after he initially noticed the vehicle stopped in the entrance driveway with its reverse and brake lights on, and thirty minutes later, saw the vehicle sitting in the same exact spot with the reverse and brake lights still on. He testified that when he walked up to the vehicle and looked in the window, he saw appellant asleep in the driver's seat. Further, the video of Officer Hamilton's contact with appellant's vehicle was admitted into evidence and shows that when the officer pulled his police car behind the vehicle the reverse and brake lights were on. The trial court found Officer Hamilton to be credible and based on his testimony, concluded that his primary motivation was to assist the driver of the vehicle. We defer to this finding. *Gonzales*, 369 S.W.3d at 855 ("We see no reason to second-guess the trial court's determination of an issue that is supported by the record and depends so much on credibility and demeanor.").

We now consider whether Officer Hamilton's belief appellant needed assistance was reasonable. The reasonableness of Officer Hamilton's belief is a mixed question of law and fact. *Byram*, 2017 WL 359791, at *4. We defer to the trial court's determination of the facts constituting the circumstances facing the officer prior to the seizure. We review de novo the question of whether a reasonable person under those circumstances would believe that appellant was in need of help. *Id*.

In determining whether an officer's belief that an individual needs help is reasonable, we consider a non-exclusive list of relevant factors: (1) the nature and level of distress exhibited by the individual; (2) the location of the individual; (3) whether or not the individual was alone

–6–

and/or had access to assistance independent of that offered by the officer; and (4) to what extent the individual—if not assisted—presented a danger to herself or others. *Byram*, 2017 WL 359791, at *4 (citing *Wright*, 7 S.W.3d at 152). Reasonableness remains the ultimate standard. "These '*Wright* factors' are merely considerations that may be useful for determining what is reasonable under the totality of the circumstances, and are not 'the elements of reasonableness." *Id.* (quoting *Gonzales*, 369 S.W.3d at 855).

Appellant argues that appellant exhibited no distress because "[t]he fact that an individual is sitting in their running car early in the morning on a very cold day for approximately 30 minutes, even if the reverse lights were on . . . is such a commonplace thing that no one else in the apartment complex felt the need to intervene or to call a report a suspicious vehicle." Appellant further asserts, "[a] reasonable interpretation would be that the driver was playing on their phone, or putting on their make-up, or waiting for their wife who was still in the apartment, or engaging in other activities to prepare for the day while their vehicle warmed up." We disagree with appellant that he did not exhibit a level of distress for Officer Hamilton to reasonably believe he needed assistance.

"A particular level of exhibited distress may be seen as more or less serious depending on the presence or absence of the remaining three factors. *Gonzales*, 369 S.W.3d at 855 (quoting *Corbin*, 85 S.W.3d at 277). Further, the community-caretaking doctrine is not the same as the emergency aid doctrine; the distress exhibited by the individual need not suggest harm dire enough to trigger the emergency aid doctrine. *Byram*, 2017 WL 359791, at *4 (citing *Laney*, 117 S.W.3d 854, 861 (Tex. Crim. App. 2003)).

In this case, Officer Hamilton observed appellant's vehicle stopped with its reverse and brake lights on. Thirty minutes later, he saw the same vehicle sitting in the same exact spot with the reverse and brake lights still on. The location of the vehicle was the end of the entrance

driveway leading to the parking lot of an apartment complex. The driveway to the apartment complex was located off of a major thoroughfare in the City of Greenville.[1] When the officer pulled his patrol car behind the vehicle, there was no attempt by the occupant of the vehicle to take it out of reverse or move the vehicle. Further, there was nothing blocking the vehicle which would have prevented the driver from pulling forward or turning left or right into the parking area. When Officer Hamilton approached the vehicle and looked in the window, he saw appellant asleep in the driver's seat. There were no other people in the vehicle. There was no evidence appellant had access to a cell phone or other means to call for assistance. Although appellant argues that the officer was not the only source of assistance because appellant was "only steps away from multiple doors with multiple different opportunities to obtain aid, if such were needed." This argument assumes that the people going in and out of the apartment complex made the same observations as Officer Hamilton did. There is no evidence that anyone in the apartment complex noticed that there was a vehicle in reverse gear sitting in the same spot for a lengthy period of time, that anyone observed appellant sleeping in the driver's seat while the vehicle was in reverse gear, or that anyone from the apartment complex called 911 to request assistance or report a suspicious vehicle. Finally, given the location of the vehicle and the fact that appellant was asleep in the driver's seat with the vehicle in reverse, appellant was not only a danger to himself but a danger to others. Had appellant taken his foot off the brake while he sat there sleeping, the vehicle could have backed out into the street and hit another vehicle driving by.

We conclude Officer Hamilton reasonably exercised his community caretaking function, because, under the totality of the circumstances, it was reasonable for him to believe appellant

---

[1] Officer Hamilton testified that he was driving on Joe Ramsey Boulevard when he spotted the vehicle in the driveway.

needed help. The trial court properly denied the motion to suppress. We overrule appellant's first issue.

## II. Article 38.23 Jury Charge.

In appellant's second issue, he contends that the trial court erred by failing to submit a jury instruction pursuant to article 38.23 of the Code of Criminal Procedure. Article 38.23 provides that evidence obtained in violation of Texas or federal laws or constitutions is inadmissible in a criminal prosecution. If there is a fact issue regarding whether the police acquired the evidence in violation of the laws or constitutions, the jury must be instructed to resolve the factual dispute and then disregard any evidence it decides was improperly obtained. TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005); *Morehead v. State*, 746 S.W.2d 830, 839 (Tex. Crim. App. 1988). To be entitled to an article 38.23 instruction, appellant must show that (1) an issue of historical fact was raised in front of the jury; (2) the fact was contested by affirmative evidence at trial; and (3) the fact is material to the constitutional or statutory violation that the defendant has identified as rendering the particular evidence inadmissible. *Robinson v. State*, 377 S.W.3d 712, 719 (Tex. Crim. App. 2012) (citing *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007)). Questions on cross-examination cannot, by themselves, raise a disputed fact issue. *Madden*, 242 S.W.3d at 515.

Appellant contends that whether or not appellant's reverse lights were on when his vehicle was observed by Officer Hamilton was a fact issue that was contested at trial. Appellant argues that the fact issue was raised during counsel's cross-examination of Officer Hamilton when he questioned the officer about his police report and "Officer Hamilton admitted he did not put anything about the reverse lights being on in his police report." Appellate counsel's statement regarding Officer Hamilton's admission during trial counsel's cross-examination is

misleading. The only cross-examination pertaining to the issue of whether the officer saw the reverse lights on is as follows:

> Q. All right. Well, I want to ask you about one other thing. You said that you thought you saw the reverse or back-up lights on with regard to his vehicle; is that correct?
>
> A. Yes, sir.
>
> Q. Okay. And are you aware of the fact, from reading your narrative, that at no point do you say anything with respect – in your report do you say anything with respect to putting the car into neutral or putting the car into park or turning off the ignition of the car or taking any action to change the status, that you believed, from the car being in reverse?
>
> A. Yes, sir, I am.
>
> Q. And it's correct there's nothing in there about any of that, is there?
>
> A. No, sir, it's not.
>
> Q. Okay. And –
>
> THE COURT: I'm sorry, Officer. It's not in there, or it's not correct?
>
> THE WITNESS: It's not in the report.
> . . . .
>
> Q. Okay. Would – if a person – let's assume, just a hypothetical, that a person is asleep behind the wheel of a vehicle, and the car is actually engaged in gear in reverse. Let's assume that. Okay.
> . . . .
>
> All right. That – if that hypothetical was correct, wouldn't it be a potential safety issue for the car to be in gear?
>
> A. For it to be in gear?
>
> Q. Yes, sir, if a person was asleep?
>
> A. For it not to be in park, yes.
>
> Q. It would be a safety issue for the car to be in park?
>
> A. It would need to be in park.

Q. All right. But you've already acknowledged that you didn't express anywhere in your narrative the – what would have had to have been a correction of that hazardous situation. You just acknowledged it would be hazardous for a person to be asleep and have the car in reverse. But there's nothing corrective at all in your report, as you just stated, right?

A. Yes, sir.

There is nothing in the above exchange that constitutes an admission by Officer Hamilton that his police report failed to indicate that the reverse lights were on. The questioning focused solely on whether there was anything in the report about the officer taking corrective action to take the vehicle out of reverse gear. Even if this exchange can somehow be construed as an admission from Officer Hamilton that his written report did not include the fact that appellant's vehicle had the reverse lights on, he never admitted that he was wrong about whether the reverse lights were on when he observed appellant's vehicle. *Madden*, 242 S.W.3d at 515. Further, the jury saw the video recording of Officer Hamilton's contact with appellant's vehicle which clearly showed the fact that the reverse lights of the vehicle were on when Officer Hamilton pulled up behind it. Appellant's second issue is overruled.

## III. Jury Argument.

In appellant's third issue, he contends that the trial court erred in granting the prosecutor's motion in limine regarding closing argument which prohibited him from arguing that the evidence was obtained illegally.

"Preservation of error is a systemic requirement on appeal." *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009) (footnote omitted). If an issue has not been preserved for appeal, we should not address it. *Id.* Rule 33.1(a) of the Texas Rules of Appellate Procedure provides that a complaint is not preserved for appeal unless it was made to the trial court "by a timely request, objection or motion" that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the

complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1. "The two main purposes of requiring a specific objection are to inform the trial judge of the basis of the objection so that he has an opportunity to rule on it and to allow opposing counsel to remedy the error." *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). In addition, the record must show that the trial court ruled on the complaint or refused a complaining party's request for a ruling. *See* TEX. R. APP. P. 33.1. We are not hyper-technical in examination of whether error was preserved, but a complaint on appeal must comport with the complaint made at trial. *Bekendam v. State*, 441 S.W.3d 295, 300 (Tex. Crim. App. 2014).

In this case, after the trial court denied appellant's request for a 38.23 instruction in the jury charge, the prosecutor made an oral motion in limine that defense counsel be prevented from arguing to the jury an issue about an illegal stop. When asked to respond, counsel stated that he believed everything that is in evidence is subject to being discussed in closing argument and that he should be able to discuss the sequence of events that occurred. Counsel also argued that he should be allowed to ask the jury to find his client not guilty because he had a duty to do so. The trial court agreed that counsel could discuss the facts that led up to the arrest and could ask the jury to find his client not guilty, and clarified it's ruling during the following exchange:

> THE COURT: What I'm avoiding – what I'm trying to avoid is to say that because there wasn't sufficient evidence for the officer – sufficient cause for the officer to engage your client, only for that reason. To ask them to find him not guilty is fine. I just don't want you make the argument that they should find him not guilty because there's been a violation of the United States Constitution or the Constitution of the State of Texas or the laws of either. That's what I'm instructing you not to do, to be more clear, I guess, since I've made a decision on that, a legal decision. And that issue is not before the jury for decision.
>
> Does that make sense?
>
> MR. PARIS: It does make sense, and I certainly can follow that.
>
> THE COURT: Okay.

MR. PARIS: But I assume that does not preclude me from stating: All of the evidence is before you, ladies and gentlemen. You have heard it all. And when you deliberate, I'm asking that you return a verdict of not guilty.

THE COURT: No. Absolutely not. You're welcome to say that, absolutely. The only thing I don't want you to do is to make a direct correlation between the finding of guilt or not guilty and violation of the Constitution. Because, again I've taken that issue away from the jury. But other than that, you're absolutely entitled to argue that, based on the facts of this case, you should find my client not guilty. You're absolutely entitled to argue that, yes, sir.

MR. PARIS: All right.

Counsel never objected to the trial court's ruling on the motion in limine. Even if counsel's discussion with the trial court could be construed as a definitive ruling on the state's motion,[2] on appeal, appellant argues that the trial court's ruling effectively denied him his right to counsel because counsel was prevented from making arguments essential to appellant's defense. We conclude that appellant's complaint on appeal was not preserved for appellate review because it does not comport with his arguments at trial.

Further, even if the error had been properly preserved for review, we find no merit in appellant's argument. It is well-settled that both the State and the defense are entitled to discuss facts admitted into evidence and to give reasonable explanations of the law, as long as the examples given by counsel do not constitute a statement of law contrary to that in the charge. *Morehead*, 746 S.W.2d at 841. But no party has a right to bring before the jury a matter of either law or fact for the purpose of causing them to rebel against the law and refuse to follow it. *Id*. (citing *Toone v. State,* 161 S.W.2d 90, 92 (1942)); *Eckert v. State,* 672 S.W.2d 600, 603 (Tex. App.—Austin 1984, pet. ref'd)). Nor can the State or defendant make a statement of what

---

[2] A trial judge's grant or denial of a motion in limine normally does not preserve error. *Harnett v. State*, 38 S.W.3d 650, 655 (Tex. Crim. App. 2000). It is a preliminary ruling only and subject to the trial court's reconsideration. *Norman v. State*, 523 S.W.2d 669, 671 (Tex. Crim. App. 1975). Usually, the mere granting of a motion in limine does not make it possible for the reviewing court to know what, if any, specific matters the trial court excluded for presentation to the jury. *Id*. However, in this case, the record shows that counsel sought and obtained a definitive ruling on what evidence and defensive theories he was specifically prohibited from presenting to the jury during his closing argument. *Geuder v. State*, 115 S.W.3d 11, 15–16 (Tex. Crim. App. 2003).

purports to be the law when same is not contained in the court's charge. *Id*. (citing *Cook v. State*, 540 S.W.2d 708, 710 (Tex. Crim. App. 1976). We conclude that the trial court properly prevented this line of argument. We overrule appellant's third issue.

## CONCLUSION

We affirm the trial court's judgment.

<div style="margin-left:40%;">

/David W. Evans/
DAVID EVANS
JUSTICE

</div>

Do Not Publish
TEX. R. APP. P. 47
160201F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ROBERT TYRONE JONES, Appellant

No. 05-16-00201-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 196th Judicial District Court, Hunt County, Texas
Trial Court Cause No. 30314.
Opinion delivered by Justice Evans, Justices Bridges and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 28th day of April, 2017.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ROBERT TYRONE JONES, Appellant

No. 05-16-00202-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 196th Judicial District Court, Hunt County, Texas
Trial Court Cause No. 30315.
Opinion delivered by Justice Evans, Justices Bridges and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 28th day of April, 2017.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ROBERT TYRONE JONES, Appellant

No. 05-16-00203-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 196th Judicial District Court, Hunt County, Texas
Trial Court Cause No. 30316.
Opinion delivered by Justice Evans, Justices Bridges and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 28th day of April, 2017.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ROBERT TYRONE JONES, Appellant

No. 05-16-00204-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 196th Judicial District Court, Hunt County, Texas
Trial Court Cause No. 30897.
Opinion delivered by Justice Evans, Justices Bridges and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 28th day of April, 2017.