**AFFIRMED; Opinion Filed December 6, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-00545-CR

**THOMAS DAMIEN MCLEAN, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 196th Judicial District Court**
**Hunt County, Texas**
**Trial Court Cause No. 31,671**

# MEMORANDUM OPINION

Before Justices Myers, Evans, and Brown
Opinion by Justice Evans

Thomas Damien McLean was indicted for intentionally and knowingly possessing methamphetamine in an amount of four grams or more but less than two hundred grams, enhanced by a prior conviction for burglary of a habitation. Appellant pleaded not guilty to the charge and pleaded true to the enhancement paragraph. The jury found appellant guilty of the lesser included offense of possession of methamphetamine in an amount of one gram or more but less than four grams and found the enhancement paragraph true. The jury assessed punishment at twenty years' imprisonment and a $10,000 fine. On appeal appellant raises three issues contending that: (1) the trial court erred in denying his motion to suppress; (2) the evidence is insufficient to support the conviction; and (3) he received ineffective assistance of counsel. We affirm.

**BACKGROUND**

On May 7, 2015, Deputy Jay Shallow, a peace officer with the Rockwall County Sheriff's Office, performed a traffic stop on a vehicle with defective tail lights driven by appellant. Appellant's girlfriend, Amber Gunn, was a passenger in the vehicle. During the stop, appellant gave the deputy consent to search the vehicle. During the search, Deputy Shallow found a container with methamphetamine underneath the cup holder in the center console between the driver and passenger seats. Appellant was placed under arrest. Deputy Shallow did not believe Gunn had any connection to the methamphetamine and no drugs or paraphernalia were found on Gunn herself or in her personal effects; therefore, she was released. Deputy Shallow weighed the methamphetamine at the scene at 3.7 grams. The forensic analyst at the lab where the drugs were sent for testing testified that the methamphetamine weighed 4.06 grams.[1] The jury convicted appellant of the lesser included offense of possession of methamphetamine in an amount of one gram or more but less than four grams.

**ANALYSIS**

**I.     Motion to Suppress**

In his first issue, appellant contends that the trial court erred by denying his motion to suppress because Deputy Shallow did not have reasonable suspicion to conduct a traffic stop. We disagree.

Deputy Shallow testified that as part of his duties as a deputy sheriff, he patrolled the county. On May 7, 2015, he worked the day shift and his attention was drawn to a GM model SUV with tail lights that could not be seen properly because they were spray-painted black. Deputy Shallow testified that this defective equipment constituted a violation of section 547.004

---

[1] The discrepancy in weight was explained as being due to the fact that Deputy Shallow testified that he basically poured out the loose crystals onto the scale without scraping the container clean, whereas the forensic analyst testified that she removed as much evidence from the container as she reasonably could.

of the traffic code which provides that tail lights have to be displayed in a safe manner and "basically states if it's not factory then it's displayed in an unsafe manner." He testified that he could only see the tail lights "very dimly" and that it was unsafe. Deputy Shallow also testified that sections 547.302 and 547.303 of the traffic code required that the rear tail lights be red and visible from 1,000 feet. He testified that the tail lights on this vehicle were "more black" in color.

After Deputy Shallow stopped the vehicle and made contact with appellant, the driver, appellant agreed with the deputy that the tail lights were too dark and told him that he was going to sand "it" [the paint] off later. During cross-examination, Deputy Shallow acknowledged that he did see the brake lights come on when appellant stopped at the stop sign. He also testified that he was sure there was a point when he was 1,000 feet behind the vehicle when he followed it, but could not state exactly at which point that was. The State argued that Deputy Shallow had reasonable suspicion and probable cause that a traffic violation had occurred under the various sections of the traffic code referred to during the deputy's testimony. Defense counsel argued that the deputy was able to see the brake lights, there was no testimony that any of the lights did not work, and there was no testimony that the deputy was either 500 or 1000 feet away.[2] After viewing the video showing the two vehicles in motion and the stop itself, the trial court denied the motion to suppress.

A trial court's ruling on a motion to suppress is reviewed for an abuse of discretion. *Lujan v. State*, 331 S.W.3d 768, 771 (Tex. Crim. App. 2011) (per curiam). In conducting this review, appellate courts employ a bifurcated standard. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). We give almost total deference to a trial court's rulings on questions of historical fact

---

[2] During its argument on the motion to suppress, the prosecutor referenced the fact that different sections of the provisions of the traffic code pertaining to lighting requirements set forth a visibility distance requirement of either 500 feet or 1000 feet. However, the prosecutor did not reference a particular section number, nor was there any indication that such provision pertained specifically to visibility distance requirements for tail lights.

and mixed questions of law and fact that turn on an evaluation of credibility and demeanor, but we review de novo mixed questions of law and fact that do not turn on credibility and demeanor. *Id.*

We view the evidence in the light most favorable to the trial court's ruling, regardless of whether the trial court granted or denied the motion to suppress. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011). Therefore, we afford the prevailing party the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from the evidence. *Id.* In this case, the trial court did not make explicit findings of historical fact. We therefore review the evidence in the light most favorable to the court's ruling. *Carmouche v. State*, 10 S.W.3d 323, 327–28 (Tex. Crim. App. 2000).

A police officer has reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Derichsweiler v. State*, 348 S.W.3d 906, 914–15 (Tex. Crim. App. 2011). In making a reasonable suspicion determination, we are to use an objective standard that disregards any subjective intent of the officer making the stop and look solely to whether an objective basis for the stop exists. *See Ford v. State*, 158 S.W.3d 488, 492–93 (Tex. Crim. App. 2005). A reasonable-suspicion determination is made by considering the totality of the circumstances. *Id.*

An officer may lawfully stop and reasonably detain a person for a traffic violation. *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992). Section 547.322(d) of the transportation code provides that "A taillamp shall emit a red light plainly visible at a distance of 1,000 feet from the rear of the vehicle." TEX. TRANSP. CODE ANN. § 547.322(d) (West 2011). Deputy Shallow's testimony indicated that the tail lights on appellant's vehicle were "more black," than red in color and that they were not visible 1,000 feet away. The video of Deputy Shallow's vehicle following appellant's vehicle supports the deputy's testimony. The video shows that the tail lights are not

–4–

visible at all while the deputy is following the vehicle and that the only time any semblance of a red light is visible is when the deputy's vehicle is within a couple of feet of appellant's vehicle at the stop sign. Further, appellant admitted to the deputy when he was stopped that he knew the tail lights were too dark. We conclude that circumstances existed upon which an officer, could reasonably suspect that appellant had violated a traffic law. Accordingly, the trial court did not err in holding that the stop of appellant's vehicle was lawful. We overrule appellant's first issue.

## II.     Sufficiency of Evidence

In appellant's second issue, he contends the evidence is legally insufficient to link him to the methamphetamine. He argues that no controlled substance or contraband was found on his person and there was no evidence that appellant was the sole owner of the vehicle or the only person with rightful possession of the vehicle when searched. He also argues that the passenger had equal access to the console area where the methamphetamine was discovered.

In reviewing the sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict, and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 313 (1979); *Brooks v. State,* 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). We assume the fact-finder resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the trier of fact's determinations of witness credibility and the weight to be given their testimony. *Brooks,* 323 S.W.3d at 899.

To establish that appellant was guilty of unlawful possession of methamphetamine, the State must prove that appellant exercised control, management, or care of the substance, and that he knew the matter possessed was contraband. *See Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). The evidence establishing possession may be either direct or circumstantial,

but must show that appellant's connection to the methamphetamine was more than just fortuitous. *Id.* at 405–06. Although appellant's mere presence where the drugs are found is insufficient to establish possession, appellant's proximity to the drugs combined with other evidence can prove possession beyond a reasonable doubt. *See Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006).

Factors that can be sufficient, either singly or in combination, to establish possession of contraband include: (1) presence when the search is conducted; (2) whether the contraband is in plain view; (3) proximity to and the accessibility of the contraband; (4) the accused being under the influence of narcotics when arrested; (5) possession of other contraband or narcotics when arrested; (6) incriminating statements made by the accused when arrested; (7) an attempt to flee; (8) furtive gestures; (9) an odor of contraband; (10) the presence of other contraband or drug paraphernalia; (11) whether the accused owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) possession of a large amount of cash; (14) conduct indicating a consciousness of guilt; (15) the quantity of the contraband; and (16) whether the accused was the driver of the automobile in which the contraband was found. *See Evans*, 202 S.W.3d at 162 n.12; *McQuarters v. State*, 58 S.W.3d 250, 259 (Tex. App.–Fort Worth 2001, pet. ref'd). It is not the number of links that is dispositive, but rather the logical force of all the evidence, direct and circumstantial. *Evans*, 202 S.W.3d at 162.

The record reflects the following evidence that affirmatively links appellant to the methamphetamine: The methamphetamine was found in an enclosed area—underneath the cup holder in the center console—of the vehicle appellant was driving. Deputy Shallow testified that the cup holder appeared loose, indicating to him that it had been removed a few times. The console and cup holder was located between the driver and passenger's seat, and thus, was readily

accessible to appellant. Although the vehicle was registered to appellant's father, the passenger, appellant's live-in girlfriend, testified that appellant was the main operator of the vehicle and that she considered the vehicle appellant's car for all intents and purposes. Further, appellant's demeanor indicated to the deputy that appellant was possibly under the influence of narcotics. Deputy Shallow testified that appellant seemed to be nervous and was breathing pretty heavy; appellant could not stand still and he was somewhat jittery. In addition, appellant asked the deputy on numerous occasions if he could become a confidential informant to work off his case indicating appellant had consciousness of guilt.

Appellant argues that there are several factors that negate any finding of an affirmative link between appellant and the methamphetamine noting the fact that appellant consented to the search, and voiced his surprise and anger that contraband was in the vehicle he was driving. However, Deputy Shallow testified that appellant's surprise and shock did not seem genuine. Deputy Shallow also testified that appellant's offer to move some speakers in the rear of the vehicle before he searched the vehicle raised his suspicion because in his experience, a suspects' offer to help in a certain location of the place to be searched is an attempt to misdirect the search to a place farthest away from the drugs. Appellant also argues that Gunn's testimony indicated that appellant was not the sole operator of the vehicle. While Gunn did testify that other people such as appellant's father, mother, and the mother of his children occasionally drove the vehicle, Gunn also testified she could not remember if anyone else had driven the vehicle within the week or month that the arrest occurred. Appellant further argues Gunn, as the passenger, shared proximity to the drugs with appellant. Although appellant acknowledges Gunn testified the methamphetamine was not hers and she was not found to be in possession of any other contraband or paraphernalia connecting her to the drugs, appellant argues, there were at least three minutes while the deputy was questioning appellant outside of the vehicle before either Gunn or the vehicle was searched during

which Gunn had ample opportunity to place the methamphetamine in the console without appellant's knowledge. The jury was not required to believe the statements appellant made to the deputy denying knowledge of the methamphetamine in the vehicle, or the alternate explanation of how the drugs could have been placed in the console by his passenger or some other driver weeks before the arrest occurred. *See Evans*, 202 S.W.3d at 166. Further, the prosecution has no affirmative duty to rule out every hypothesis except that of guilt. *See Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011).

Viewing the evidence in the light most favorable to the verdict, we conclude the evidence is sufficient to link appellant to the methamphetamine. We overrule appellant's second issue.

## III. Ineffective Assistance of Counsel

In appellant's third issue, he contends that he was denied the effective assistance of counsel due to trial counsel's failure to request a jury instruction pursuant to article 38.23 of the code of criminal procedure.

To prove a claim of ineffective assistance of counsel, appellant must show that (1) his trial counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). Appellant has the burden to establish both prongs by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). "An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *see also Strickland*, 466 U.S. at 697.

On this record, appellant cannot show that counsel's failure to request an article 38.23 jury instruction constituted deficient performance. Article 38.23 provides that evidence obtained in

violation of Texas or federal laws or constitutions is inadmissible in a criminal prosecution. If there is a fact issue regarding whether the police acquired the evidence in violation of the laws or constitutions, the jury must be instructed to resolve the factual dispute and then disregard any evidence it decides was improperly obtained. TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2018); *Morehead v. State*, 746 S.W.2d 830, 839 (Tex. Crim. App. 1988). To be entitled to an article 38.23 instruction, appellant must show that (1) an issue of historical fact was raised in front of the jury; (2) the fact was contested by affirmative evidence at trial; and (3) the fact is material to the constitutional or statutory violation that the defendant has identified as rendering the particular evidence inadmissible. *Robinson v. State*, 377 S.W.3d 712, 719 (Tex. Crim. App. 2012) (citing *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007)).

In support of his claim, appellant makes the conclusory statement, "The jury heard contested and conflicting evidence regarding the alleged traffic violation given as a reason for the traffic stop including a video recording (State's Exhibit 1) and the testimony of Deputy Shallow." Appellant does not direct us to any testimony or evidence in the record which conflicts with Deputy Shallow's testimony regarding the reason for the traffic stop, nor does he direct us to anything in the record showing that the reason for the stop was contested. Deputy Shallow testified that he stopped appellant's vehicle because the tail lights could not be seen properly because they were spray-painted black. The deputy's testimony referred to different sections of the transportation code which required that lights had to be displayed in a safe manner, that rear tail lights had to be red, and that they had to be visible from a distance of a 1,000 feet. He testified that he could only see the tail lights "very dimly" and that it was unsafe. Deputy Shallow's testimony indicated that the tail lights on appellant's vehicle were "more black," than red in color and that they were not visible 1,000 feet away. The video of Deputy Shallow's vehicle following appellant's vehicle supports the deputy's testimony. Further, appellant admitted to the deputy when he was stopped

–9–

that he knew the tail lights were too dark. On cross-examination, Deputy Shallow acknowledged that he did see the brake lights come on when appellant stopped at the stop sign. However, nothing about this testimony conflicts with his testimony regarding the reason for stop as it pertained to the visibility and color of the tail lights. In any event, questions on cross-examination cannot, by themselves, raise a disputed fact issue. *Madden*, 242 S.W.3d at 515.

Based on the evidence presented, we find nothing in the record which raises a fact issue regarding the reason for the stop. Counsel could not have performed deficiently by failing to request an article 38.23 jury instruction because appellant was not entitled to such an instruction. *See Hardin v. State*, 951 S.W.2d 208, 211 (Tex. App.—Houston [14th Dist.] 1997, no pet.).

Because appellant has failed to satisfy the first prong of the Strickland test, we need not consider the requirements of the second prong. We overrule appellant's third issue.

## CONCLUSION

We affirm the trial court's judgment.

/David Evans/
DAVID EVANS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
180545F.U05

–10–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

THOMAS DAMIEN MCLEAN, Appellant

No. 05-18-00545-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 196th Judicial District Court, Hunt County, Texas
Trial Court Cause No. 31,671.
Opinion delivered by Justice Evans,
Justices Myers and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 6th day of December, 2018.